RUPERT BAPTISTE
1063 BRIGHTON STREET
UNION, NEW JERSEY 07083
973-715-1142
rebaptiste@gmail.com
Plaintiff, Pro Se

|  |  |
|---|---|
|  | **UNITED STATES DISTRICT COURT** |
|  | **FOR THE DISTRICT OF NEW JERSEY** |
| RUPERT BAPTISTE, |  |
| Plaintiff, | **CASE NO.** |
| v. |  |
| NEELY MOKED, ESQ., | **COMPLAINT** |
| Defendant. |  |
|  | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. In this action, Plaintiff RUPERT BAPTISTE seeks damages from Defendant NEELY MOKED under New Jersey and United States tort law.

2. The Defendant represented the Plaintiff in divorce proceedings.

3. The Plaintiff brings this action for legal malpractice, tortious concealment of evidence, and recklessness and total disregard for the Rules of Professional Conduct, ignoring the duty of care owed to a client.

4. This is a case of an attorney's failure to give a client, "a full and accurate assessment of the case in support of and in defense of his claims." In reliance on the information that the Defendant gave me, I entered into a marital settlement agreement that was unconscionable.

5. In Sommers v. McKinney, 670 A.2d 99 (N.J. Super. Ct. App. Div. 1996). The Court said it was the attorney's duty to provide Sommers with accurate information that he knew

or should have known about fundamental matters affecting her case, was "so basic" that "a layperson's common knowledge [was] sufficient to permit a finding that the duty of care [had] been breached." Id. at 10, 670 A.2d 99 (citations omitted). Similarly, in this case, the Defendant's duty to disclose the fraud committed by my ex-wife, the existence of which she admitted that she knew or should have known, is not "so esoteric that the average juror could not form a valid judgment as to whether [Moked's failure to make a point of my ex-wife's falsified paperwork] was reasonable." Sommers, 287 N.J.Super. at 10, 670 A.2d 99 (citations omitted).

6. A violation of the Rules of Professional Conduct "can be considered evidence of [his] malpractice." Sommers, 287 N.J.Super. at 13, 670 A.2d 99; see also Baxt v. Liloia, 281 N.J. Super. 50, 57, 656 A.2d 835 (App.Div. 1995) (stating that it is well established in New Jersey that "the Rules of Professional Conduct set forth an appropriate standard of care by which to measure an attorney's conduct"). Accordingly, Moked breached her duty with the requisite degree of care. See Petrillo, 139 N.J. at 489, 655 A.2d 1354.

7. In Jakelsky v. Friehling, 33 F. Supp.2d 359 (D.N.J. 1999), the Court opined that the resolution of the subtle and elusive issue of proximate cause is perhaps the most critical determination bearing on the fairness of imposing liability on an otherwise negligent defendant. The proximate cause inquiry asks whether the injury was reasonably foreseeable or was, on the contrary, a remote or abnormal incident that was not otherwise reasonably foreseeable by defendant. The tortfeasor need not foresee the precise injury; it is enough that the type of injury be within an objective realm of foreseeability. Foreseeability means that which it is objectively reasonable to expect, not merely, what might conceivably occur.

8. In cases involving claims of legal malpractice, the New Jersey Supreme Court has directed that the "substantial factor test" of proximate cause should be applied. Conklin v. Hannoch Weisman, 145 N.J. 395, 420, 678 A.2d 1060 (1996). In Conklin, the court held that, "[a]lthough…there may be any number of concurrent causes of an injury, `[n]evertheless, these

acts need not, of themselves, be capable of producing the injury; it is enough if they are a *substantial factor* in bringing it about.'" Conklin, 145 N.J. at 419-20, 678 A.2d 1060 (citations omitted, emphasis in original). The Conklin court elaborated, stating:

> The substantial factor test accounts for the fact that there can be any number of intervening causes between the initial wrongful act and the final injurious consequence and does not require an unsevered connecting link between the negligent conduct and the ultimate harm. The test is thus suited for legal malpractice cases in which inadequate or inaccurate legal advice is alleged to be a concurrent cause of harm.
> See id.

9. In addition, "expert testimony may not be necessary to establish proximate cause in every legal malpractice case, particularly where the causal relationship between the attorney's legal malpractice and the client's loss is so obvious that the trier of fact can resolve the issue as a matter of common knowledge." Sommers, 287 N.J.Super. at 11, 670 A.2d 99 (citations omitted); but see Vort v. Hollander, 257 N.J. Super. 56, 61, 607 A.2d 1339 (App.Div. 1992) (holding that even if alleged malpractice was so blatant that it was within the ken of ordinary laypersons, expert testimony was required to establish that malpractice was proximate cause of damage to clients).

10. Ordinarily questions of proximate cause are left to the jury for resolution. Jakelsky, 33 F. Supp.2d at 366 (citation omitted). Where, however, there is no genuine issue of material fact in dispute as to proximate cause, the issue may properly be resolved on summary judgment. See § II supra.

11. In Sommers, the Court said, "As a federal court sitting in diversity, this Court is obliged to apply the choice of law rules of the forum state — in this case, New Jersey." Capone v. Nadig, 963 F. Supp. 409, 412 (D.N.J. 1997) (Orlofksy, J.) (citing Klaxon v. Stentor Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)); see also Slater v. Skyhawk Transp., Inc., 187 F.R.D. 185, 192 (D.N.J. 1999) (Orlofsky, J.). New Jersey applies a flexible "governmental

interest" analysis requiring "application of the law of the state with the greatest interest in resolving the particular issue." Capone, 963 F. Supp. at 412 (quoting Gantes v. Kason Corp., 145 N.J. 478, 484, 679 A.2d 106 (1996)) (internal quotations omitted).

12. The first step in the governmental interest analysis is determining whether an actual conflict exists between the laws of the interested states. See Slater, at 192; Capone, 963 F. Supp. at 412. If a court determines that an actual conflict exists, then a court must weigh the competing states' interests. See Capone, 963 F. Supp. at 412. In the absence of an actual conflict, the court applies the law of the forum state. See id. at 188, n. 1 (citing Amoroso v. Burdette Tomlin Mem'l Hosp., 901 F. Supp. 900, 905 (D.N.J. 1995) (Irenas, J.)).

13. The Plaintiff has suffered severe emotional distress as a result of the harm brought on by the Defendant's recklessness and is entitled to damages. See, e.g., Tuttle v. Atlantic City R.R. Co., 66 N.J.L. 327 (E. & A. 1901); Consolidated Traction Co. v. Lambertson, 60 N.J.L. 457, 458 (E. & A. 1897); Greenberg v. Stanley, 51 N.J. Super. 90, 106 (App. Div. 1958), mod. on other grounds, 30 N.J. 485 (1959); Justesen v. Pennsylvania R.R. Co., 92 N.J.L. 257 (Sup.Ct. 1919); Ward v. West Jersey & S.R.R. Co., 65 N.J.L. 383 (Sup.Ct. 1900); see also Graf v. Taggart, 43 N.J. 303, 312-313 (1964).

14. In Maldonado v. Leeds, 177 N.J. 487 (N.J. 2003) the Court opined that severe emotional distress should not be dismissed because of any lapse of time but, rather, the Court must fairly judge the actual impact of such distress.

> "[I]n order to evaluate fairly whether plaintiff's emotional distress was idiosyncratic, the average person must be one similarly situated to the plaintiff." Taylor, supra, 152 N.J. at 516, 706 A.2d 685. In our view, a jury may reasonably find that plaintiff did, in fact, suffer "serious psychological sequelae," Trisuzzi, supra, 285 N.J.Super. at 27, 666 A.2d 543, and that her emotional distress is "palpable, severe, or enduring" as a result of witnessing her son's accident. Decker, supra, 116 N.J. at 431, 561 A.2d 1122. Under the circumstances presented, plaintiff's claims for emotional distress cannot be dismissed "as a matter of law."

Similarly, the emotional distress that has been suffered by the Plaintiff is palpable, severe, and enduring as a result of Defendant's reckless behavior that will adversely affect the emotional well-being of the Plaintiff for the rest of his life.

15. The Defendant's total disregard for the duty owed to me, her client, I made a decision to enter into an agreement that was, and is, unconscionable.

## PARTIES

16. Plaintiff RUPERT BAPTISTE is a resident of the Township of Union, County of Union, State of New Jersey.

17. Upon information and belief, the Defendant NEELY MOKED, ESQ. has offices in the City of New York, State of New York.

## JURISDICTION AND VENUE

18. This Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331, 1332, 1367.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to this action occurred within this District and one of the Parties resides within this district.

20. This Court must have subject matter jurisdiction. The severe financial harm and the emotional distress brought on by the Defendant's recklessness has and will continue to greatly affect the financial and emotional well-being of the Plaintiff. The effects of the acts of the Defendant have had, and will <u>forever continue to have</u>, damages that are immeasurable and far-reaching. The damages in this matter, because of the callous acts that will go on forever, cannot be determined with absolute certainty as this time. However, the Court has said there is no need to state what the damages would be in a case such as this. <u>Stephenson v. Consolidated Rail Corp.</u>, 2013 WL 1750005 (D.N.J. April 23, 2013). Given the severity of the long-lasting effects, the award of damages in excess of $75,000 is highly likely.

21. Due to the nature of this matter future damages must be taken into consideration. In Faltaous v. Johnson & Johnson, 2007 WL 3256833, at 9 (D.N.J. Nov. 5, 2007), the Court found that, "[w]hile the amount in controversy is determined through consideration of the good faith allegations of the complaint at the time it was filed . . . , damages accruing in the future are properly counted against the jurisdictional amount 'if the right to future payments . . . will be adjudged in the present suit.'" Id.

22. The consideration of future damages in a jurisdictional evaluation is not unique to CAFA cases. Several courts considering traditional diversity jurisdiction have found that future damages should be evaluated in an inquiry to determine whether the $75,000 threshold applicable to that form of jurisdiction has been met. For example, in Broglie v. MacKay-Smith, 541 F.2d 453, 455 (4th Cir. 1976), the Fourth Circuit found that where the complaint alleged continuing damage that will accrue in the future and be adjudged in the action, such continuing damage should be "counted against the jurisdictional amount." The court found that "plaintiffs here may rely upon costs to be incurred subsequent to the filing of the complaint but prior to trial in meeting the jurisdictional amount requirement." Id.

## FACTUAL ALLEGATIONS

23. The Defendant was representing me in divorce proceedings. I became suspicious that my wife had never been legally divorced from her prior husband and made this concern clear to the Defendant.

24. I respectfully contend that this cause of action accrued in July of 2011 when I called the Gambian Consulate and was told that the Consulate "does not give out that type of information." The defendant had informed me that the Consulate absolutely confirmed to her the prior divorce of my wife.

25. After calling the Consulate myself, I retained a Gambian attorney, who on September 16, 2011, certified:

> [Although] the stamp on the document is the stamp of Kanifing Islamic Court . . . the Kanifing Islamic Court does not have any record which can confirm that the said divorce certificate was issued from that court. Further the serial numbers on the divorce certificate herein have been found to be completely different from the serial numbers of the certificate booklets used in Kanifing.

26. Fraud and legal malpractice claims are subject to a six-year statute of limitations. N.J.S.A. 2A:14-1; McGrogan v. Till, 167 N.J. 414, 419 (2001). A legal malpractice action "accrues when a client suffers actual damages and knows or should reasonably know that the lawyer has breached a professional duty owed to the client." Vastano v. Algeier, 178 N.J. 230, 232 (2003). Under the discovery rule, the statute of limitations is tolled until the "plaintiff learns, or reasonably should learn, the existence of that state of facts which may equate in law with a cause of action." Burd v. N.J. Tel. Co., 76 N.J. 284, 291 (1978). Thus, the inquiry focuses on when the underlying facts, and not the legal effect of those facts, are known or knowable. Id. at 291-92.

27. Under the principles of equitable estoppel, "a defendant may be denied the benefit of a statute of limitations where, by [his or her] inequitable conduct, [he or she] has caused a plaintiff to withhold filing a complaint until after the statute has run." Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 171 (App. Div. 2007). A plaintiff will not be permitted to rely on the doctrine if he or she "has the information in sufficient time to comply with the limitations period." Id. at 172. Moreover, "absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Freeman v. State, 347 N.J. Super. 11, 31 (App. Div.), certif. denied, 172 N.J. 178 (2002).

28. Where I had my suspicions, I did alert the defendant to my concerns, and relied on her to do due diligence, commence discovery, and provide the correct information to me. The defendant provided false information to me and it caused me to enter into an agreement that is unconscionable.

## COUNT ONE
## MALPRACTICE

29. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

30. Defendant willfully, intentionally, and recklessly ignored her duties as an officer of the Court, violating Rules of the Rules of Professional Conduct.

31. Defendant's actions have caused, and will continue to cause, the Plaintiff to be harmed.

32. As a direct and proximate result of these malicious and conscious wrongful actions, the Plaintiff has suffered, and will continue to suffer indefinitely, and is entitled to damages from the Defendant, including punitive damages, to be determined at trial.

## COUNT TWO
## TORTIOUS CONCEALMENT OF EVIDENCE

33. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

34. The Defendant willfully and purposefully withheld information from me regarding a fraud committed by wife. The Defendant had an explicit duty of care to provide me with the truth and enable me to make a decision based on the truth, and the actual reality.

35. The Defendant breached her duty of care by negligently and/or recklessly preventing me from having information that would have a direct impact on negotiations.

36. The Defendant's breach of duty directly and proximately caused the Plaintiff to suffer damage.

37. As a result, the Plaintiff has been damaged in an amount to be determined at trial.

## COUNT THREE
## EMOTIONAL DISTRESS

38. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

39. The Defendant willfully and purposefully, misrepresented facts, ignoring the important fact that she had a duty of care as dictated by the Rules of Professional Conduct.

40. The Defendant's actions has caused not only financial harm, but extreme emotional distress that has caused, and will continue to cause, severe emotional harm.

41. As a result, the Plaintiff has been damaged in an amount to be determined at trial.

## LEGAL ARGUMENTS

### I. Baxt v. Liloia, 281 N.J. Super. 50, 61, 656 A.2d 835 (App.Div. 1995)

42. In Baxt v. Liloia, 281 N.J. Super. 50, 61, 656 A.2d 835 (App.Div. 1995) (Dreier, P.J.A.D., concurring), appeal after remand, 284 N.J. Super. 221, 664 A.2d 948 (App.Div. 1995) the Court said that a breach of ethical rules provides a legitimate basis for a civil action against an attorney.

> Courts in New Jersey and elsewhere have nonetheless recognized the relevance of the Rules in civil cases against attorneys. See, e.g., Allen, supra, 453 S.E.2d at 721 (finding that "pertinent Bar Rules are relevant to the standard of care in a malpractice action"); Petrillo, supra, 139 N.J. at 479, 655 A.2d 1354 (finding RPCs to be useful in determination "whether an attorney owes a duty to a non-client third party"); Smith v. Haynsworth, Marion, McKay & Geurard, 322 S.C. 433, 472 S.E.2d 612, 614 (1996) (holding that, "in appropriate cases, the RPC may be relevant and admissible in assessing the legal duty of an attorney in a malpractice action"); Lazy Seven Coal Sales, Inc., supra, 813 S.W.2d at 405 (reasoning that, "[e]ven though . the Code does not define standards for civil liability, the standards stated in the Code are not irrelevant in determining the standard of care in certain actions for malpractice"). Our courts have recognized that the existence of a duty owed by an attorney may be supported by reference to an attorney's obligations under the RPCs, and that plaintiffs may present evidence that an attorney has violated the RPCs in cases claiming the attorney has breached his or her duty of care.
>
> Thus, in Albright v. Burns, supra, the Appellate Division found that an attorney had a duty to third party beneficiaries of a will where the attorney had assisted his client in removing substantial assets from decedent's estate prior to his death. 206 N.J.Super. at 632-33, 503 A.2d 386. The court drew support from the "newly-adopted" Rules of Professional Conduct, citing RPC 1:15 (requiring a lawyer to deal properly with property belonging to third person) and RPC 1.7

> (generally limiting dual representation where clients' interests are adverse) because the attorney "represent[ed] both] the estate and its principal debtor." Id. at 633-34, 503 A.2d 386. The court explained:

> While violations of ethical standards do not per se give rise to tortious claims, the standards set the minimum level of competency which must be displayed by all attorneys. Where an attorney fails to meet the minimum standard of competence governing the profession, such failure can be considered evidence of malpractice.

> [Id. at 634, 503 A.2d 386 (citations omitted).]

## II. Sommers v. McKinney, 670 A.2d 99 (N.J. Super. Ct. App. Div. 1996)

43. In Sommers v. McKinney, 670 A.2d 99 (N.J. Super. Ct. App. Div. 1996) the Court affirmed that a violation of the Rules of Professional Conduct can be considered as evidence of malpractice:

> Violation of the rules of professional conduct do not per se give rise to a cause of action in tort. Petrillo v. Bachenberg, 263 N.J. Super. 472, 483, 623 A.2d 272 (App.Div. 1993), aff'd, 139 N.J. 472, 655 A.2d 1354 (1995); Albright, supra, 206 N.J. Super. at 634, 503 A.2d 386; but see Baxt v. Liloia, 281 N.J. Super. 50, 61, 656 A.2d 835 (App. Div.) (Dreier, P.J.A.D., concurring) (breach of ethical rules provides a legitimate basis for a civil action against an attorney), appeal after remand, 284 N.J. Super. 221, 664 A.2d 948 (App. Div. 1995). However, because the ethical standards set the minimum level of competency to be displayed for all attorneys, violation of the rules can be considered evidence of malpractice. Albright, supra, 206 N.J. Super. at 634, 503 A.2d 386; Lamb v. Barbour, 188 N.J. Super. 6, 12, 455 A.2d 1122 (App.Div. 1982), certif. denied, 93 N.J. 297, 460 A.2d 693 (1983). Moreover, even when plaintiff establishes that rules of conduct have been violated, she must also establish proximate cause. Albright, supra, 206 N.J. Super. at 635, 503 A.2d 386; Lovett v. Estate of Lovett, 250 N.J. Super. 79, 98, 593 A.2d 382 (Ch. Div. 1991).

## III. Viviano v. CBS, Inc., 251 N.J. Super. 113, 123-26, 597 A.2d 543 (App.Div. 1991)

44. In Viviano v. CBS, Inc., 251 N.J. Super. 113, 123-26, 597 A.2d 543 (App.Div. 1991), it was found that the defendant held back information that the Plaintiff needed to prove

their case. Similarly, in this matter, the Defendant willfully and purposefully withheld vital information that had a direct impact on the decision made with regard to marital settlement agreement. The withholding of that information caused me to enter into an unconscionable agreement.

## DECLARATION

Plaintiff declares that he is not an expert in the law but that he does know right from wrong and intends no one harm by his word or deed. Therefore, if any human being is damaged by any statement(s) herein and informs Plaintiff of the facts, he will sincerely make every effort to amend his allegations. Plaintiff hereby reserves the right to amend and make amendment to this document as necessary in order that the truth may be ascertained and proceedings justly concluded. If a party given notice by means of this document has information that would controvert and overcome this affidavit, he/she is respectfully requested to advise Plaintiff IN WRITTEN AFFIDAVIT FORM, sworn/affirmed true, correct, complete, and not misleading upon the Affiant's full commercial liability, within thirty (30) days from the receipt hereof, if Affiant can prove with particularity, by stating all requisite, evidentiary facts and all requisite, actual law – not mere ultimate facts and conclusions of law – that Plaintiff's declarations herein are substantially and materially false, sufficiently to alter materially their status and factual statements. Silence stands as consent to, and tacit approval of, the factual declarations herein being established as matters of law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays this court to enter judgments against Defendant, as follows:

A. For Declaratory Judgment;

B. For Statutory Damages in an amount to be proven at trial;

C. For Punitive Damages in an amount to be proven at trial;

D. For Compensatory Damages in an amount to be proven at trial; and

E. For such other further relief as the court may deem just and proper.

Dated: June 9, 2017

_____
RUPERT BAPTISTE, PLAINTIFF

Rupert E. Baptiste
163 Brighton St # 1
Union, NJ 07083

To
Office of the Clerk,
United States District Court,
For the District of New Jersey,
#50 Walnut Street,
Newark, New Jersey
07102

2017 JUN 12 P 4:01
RECEIVED
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY